Spangler *against* the Commonwealth.

IN ERROR.

THE plaintiff in error was indicted in the Quarter Sessions of *Dauphin* in *February* last, for feloniously stealing on the 22d *January* 1811 " three several promissory " notes for the payment of money, viz. three bank notes, " each for the payment of five dollars, of the value each of " five dollars lawful money of the *United States*, and a pro- " missory note for the payment of money, viz. a bank note " for the payment of ten dollars like lawful money, of the " property of *William Graydon* esquire." ·

After conviction, the record was removed to this court by writ of error, where several reasons were urged for reversing the judgment; but the only one upon which the court gave any opinion, was this, that the indictment did not point out the bank or banks which issued the notes supposed to have been stolen, and consequently the charge was destitute of legal precision and certainty.

*Elder* and *Hopkins* for the plaintiff in error. No indictment can be good which wants certainty as to the thing wherein the offence was committed. Hence an indictment for forging a lease of *certain lands,* or for stealing the goods and chattels of *J. S.,* 4 *Hawk. P. C.* 41. *bk.* 2. *c.* 25. *sec.* 74., or for speaking divers false and scandalous words against *P. Q.,* being mayor of such a place, *Id. sec.* 59., is bad. It ought precisely to appear what the thing stolen is. *Commonwealth* v. *Boyer* (a), 2 *East Cr. Law* 601. *Davy* v. *Baker* (b), *Rex* v. *Robe* (c), 3 *Bac.* 555., *Indictment G.* Otherwise a man may be twice indicted for the same felony. But there is a still more solid reason for the objection here. It should appear that the notes were issued by an *incorporated* bank, for a felony cannot be committed in the taking of any other bank notes. It is questionable whether before the act of 30th *January* 1810, 9 *St. Laws* 15, bank notes were included

1811.

*Lancaster,*
*Saturday,*
May 25.

An indictment for stealing bank notes generally, under the description of promissory notes for the payment of money, is bad. It should appear on the face of the indictment that they are bank notes of some *incorporated* bank, or in some way that they are lawful notes; no unincorporated bank notes in *Pennsylvania* being at present the subject of larceny.

(a) 1 *Binn.* 201.      (b) 4 *Burr.* 2471.      (c) 2 *Stra.* 999.

1811.

SPANGLER
*v.*
COMMON-
WEALTH.

within the description in the act of 15th *April* 1790, " pro-
" missory notes for the payment of money." The legislature
appear to have thought not, by declaring in the late act, that
the robbery or larceny of any bank note of any *incorporated*
bank shall be punishable in the same manner as the robbery
or larceny of any goods or chattels. It is a declaration that
before that such a robbery was not so punishable; or at least
it is a virtual repeal of the act of 1790 so far as it respects
all bank notes. The law is intitled " an act to *amend* the
" penal laws;" and no doubt the legislature intended to put
down unincorporated banks, by affording a distinct security
to the notes of banks which had been incorporated. In the
same session, they made it unlawful for any person to offer
or to accept in payment the notes of an unincorporated bank;
*Act of* 19th *March* 1810, 9 *St. Laws* 87; of course in con-
templation of law such notes are without value, and there-
fore not a subject of property and of larceny. It does not
appear that the notes in question were not of this descrip-
tion.

*Jenkins* and *Ellmaker* for the Commonwealth. It is not
intended to support this indictment under the act of 30th
*January* 1810, but under that of 15th *April* 1790. The notes
stolen are described as promissory notes for the payment of
money, to wit, bank notes, the amounts of which are set out.
It has never been supposed heretofore that bank notes were
not promissory notes for the payment of money. Such an
objection was not started in *The Commonwealth* v. *Boyer*,
and many convictions have taken place for that offence. The
present notes could not have been such as it was unlawful
to take, and therefore of no value, because the indictment
sets forth that each five dollar note was of the value of five
dollars. The value was a mixt question of law and of fact,
which has been ascertained by the conviction; and by being
so ascertained, it follows they were not the notes of an unin-
corporated bank. It is however not to be presumed that the
legislature intended to repeal any part of the act of 1790,
but merely that the true construction was not given to
that act. The late act has not either negative or repealing
words; and the intention of putting down private banks by

means of it, cannot be attributed to the legislature, because the act for that purpose did not pass until two months afterwards.

TILGHMAN C. J. This is a writ of error to the court of Quarter Sessions of *Dauphin* county, where judgment was given against *Eve Spangler* on an indictment for stealing four bank notes.

The plaintiff in error has made several points concerning the jurisdiction of the court of Quarter Sessions, and the process for summoning the jury, on which I shall give no opinion. It will be sufficient to consider the exceptions to the indictment. *Eve Spangler* is charged with stealing " three several promissory notes for the payment of money, " viz. three bank notes, each for the payment of five dollars, " of the value each of five dollars lawful money of the *Uni-* " *ted States*, and a promissory note for the payment of mo- " ney, viz. a bank note for the payment of ten dollars, of the " value of ten dollars like lawful money, the property of " *William Graydon* esq."

The indictment is founded on the act of 5th *April* 1790; by the fifth section of which it is enacted, that robbery or larceny of " promissory notes for the payment of money," shall be punished in the same manner as robbery or larceny of any goods or chattels. I will not say whether the indictment might not have been supported, if the case had turned entirely on the act which has been mentioned. But it is necessary to take other acts into consideration. By the " act " to amend the penal laws," 30th *January* 1810, it is enacted, that robbery or larceny of any bank note or bank notes of any *incorporated bank*, shall be punished in the same manner as the robbery or larceny of any goods or chattels of equal amount. Whether the legislature considered bank notes as included in the terms " promissory notes for the " payment of money" in the act of 5th *April* 1790, is not certain. The " act to amend the penal laws" contains no express repeal of any part of the act of 5th *April* 1790; yet when larceny of the notes of *incorporated* banks is made punishable, one cannot help supposing that it was intended the notes of *unincorporated* banks should not be the subject of larceny. It is evident that in the year 1810 it was the ob-

SPANGLER
*v.*
COMMON-
WEALTH.

1811.

ject of the legislature to suppress all unincorporated banks. This appears, not only from the act just mentioned, but still more clearly from another act passed the same session, 19th March 1810, which bears strongly on the case before the court. By the first section of this last act, it is made unlawful, after 1st *May* 1810, for any association of persons, who at the time of passing the act were, or thereafter should be connected for the purpose of banking, and who were not *incorporated by law*, to make, utter or issue, any bills or notes in the nature of bank notes, payable to bearer, or order, or otherwise. The third section declares it to be unlawful for any person " to offer or accept in payment, any note is- " sued from any unincorporated bank, knowing it to be " such." The fourth section contains a proviso, that " nothing " contained in the act, should be construed so as to dis- " charge any person or persons, or any association of per- " sons, who might before the passing of the act have become " engaged for the payment of any sum of money, from such " engagements." Suppose now that a person should have knowingly received a note issued contrary to this law, and the bank had refused payment, no action would lie on it, because the courts of the commonwealth would not suffer themselves to be instrumental in inforcing the execution of an unlawful contract. This principle has been established in the cases of *Anthony's Exrs.* v. *Coulon,* and *Mitchell* v. *Smith,* both decided in this court. There may be bank notes there- fore, which are of no value or validity in law, and conse- quently cannot be the subject of larceny. For although bank notes are " promissory notes for the payment of money," within the meaning of the act of 5th *April* 1790, yet that act cannot be construed so as to afford protection to notes unlawfully issued, and unlawfully received. That being the case, it is necessary that an indictment for stealing bank notes, should either aver in general, that they were issued by a bank incorporated by law, or name the bank and aver that it was incorporated, or shew in some sufficient manner that the notes were lawful. If this is not done, judgment cannot be entered, because it cannot appear to the court that any offence has been committed.

Inasmuch then as this indictment is expressly for stealing

*bank notes,* and does not shew that they were lawful notes, I am of opinion that the judgment of the court of Quarter Sessions was erroneous.

YEATES J. It is certainly the duty of the court to pursue a middle line between the great mass of the community on the one hand, and individuals charged with offences on the other hand. Where an indictment states a criminal charge with sufficient certainty, so that the party may be fully informed thereby of the facts he is called upon to answer, and prepare for his defence, it is disreputable to the administration of the law that he should be suffered to escape with impunity for a mere slip of form, totally unconnected with the merits of the case. At the same time we well know, that too great a laxity in matters of this nature, will lead to consequences dangerous to innocence. To preserve uniformity of decisions we are necessarily obliged to follow precedents; the utmost uncertainty would ensue from our disregarding them.

I do not feel the force of the exception taken to this indictment, on account of the omission of the bank or banks which issued the notes in question. The description of the notes is more precise and particular, than if the subject matter of the charge had been a bay horse or a piece of linen, stating the price and value, which would unquestionably be good. I deem it unnecessary however to give a decided opinion on this point. But it is perfectly clear that the crime must be so stated, as that the court should be at no loss or difficulty when called upon to pronounce sentence upon a conviction. It, must be laid in the words of the act of assembly creating the offence, or at least in language plainly equipollent. Nothing can be taken by intendment.

Bank and promissory notes are mere choses in action; at common law they could not be stolen. But by the fifth section of our statute of the 5th *April* 1790 it is provided, that robbery or larceny of promissory notes for the payment of money, shall be punished in the same manner as robbery or larceny of any goods or chattels. This provision has undergone some modification from the words used in the act of 30th *January* 1810, that from and after the passage of that

1811.

SPANGLER
v.
COMMON-
WEALTH.

law, the robbery or larceny of any bank note or bank notes of any *incorporated bank*, should be punishable in the same manner as the robbery or larceny of any goods or chattels of equal amount. A subsequent law passed on the 19th *March* 1810 has declared, that from and after the first day of *May* then next, it shall be *unlawful* for any association of persons, who now are or hereafter may be connected for the purpose of banking, and who are not incorporated by law, to make, utter, or issue any bills or notes in the nature of bank notes payable to bearer, or order, or otherwise &c. By the legislature's making such notes, issued after the 1st *May* 1810, *unlawful*, they necessarily withdraw from them the general protection first afforded them by the former law of 5th *April* 1790. The day of the commission of this larceny is laid in the indictment to be on the 22d *January* 1811. Now may not the notes stolen have been issued by an unincorporated bank after the 1st day of *May* 1810? Nothing appears in the indictment, from which we can with certainty pronounce that the perpetrator of the offence was obnoxious to the punishment of a felony. And if by any possibility such judgment could not be rendered consistently with law, it is out of our power to affirm it. Though the facts stated in the indictment may be true, yet if they do not necessarily and unequivocally describe the offence of which the prisoner stands charged in a legal sense, such indictment is defective.

We may be led from our sense of justice to regret the event of this prosecution; but we should carry in our minds the observation of lord *Mansfield* in *Rex* v. *Boyce*, 4 *Burr.* 2082. " Tenderness ought always to prevail in criminal " cases, so far at least as to take care, that a man may not suf-" fer otherwise than by due course of law, nor have any hard-" ship done him, or severity exercised upon him, where the " construction may admit of a reasonable doubt or difficulty." And again in *Rex* v. *Wilkes*, 4 *Burr.* 2552. " The court is " bound to pronounce the law, as they think it is, al-" ways leaning to the favourable side where they doubt: for " so says the law." I deem it unnecessary to give an opinion on any of the other exceptions taken to the record in this cause. I have no doubt whatever that this indictment can-

not support the judgment rendered thereon, and am therefore constrained to say that the judgment must be reversed.

BRACKENRIDGE J. expressed his concurrence.

Judgment reversed.