[PHILADELPHIA, FEBRUARY 21, 1834.]

## M'LAUGHLIN *against* The COMMONWEALTH.

### IN ERROR.

An indictment for stealing three promissory notes for the payment of money, commonly called bank notes, *on* the Bank of the United States, is good.

In an indictment for stealing promissory notes for the payment of money, drawn by a bank, it is not necessary to state that the bank was duly incorporated.

Nor is it necessary that it should aver that the notes charged to have been stolen were *due and unpaid*

ERROR to the Mayor's Court of the City of *Philadelphia.*

*Thomas M'Laughlin alias Jennings,* was indicted for the larceny of " three promissory notes for the payment of money, commonly called bank notes, on the Bank of the United States, for the payment of twenty dollars each, and of the value altogether of sixty dollars ; four promissory notes for the payment of money, commonly called bank notes, on the Bank of the United States, for the payment of ten dollars each, and of the value altogether of forty dollars ; altogether of the value of one hundred dollars, of the goods and chattels, moneys and property of *Samuel Swartout,*" &c.

He was convicted of the offence charged, and his counsel filed the following reasons in arrest of judgment.

1st. That the indictment describes the notes alleged to have been stolen, as promissory notes *on* the Bank of the United States, when it should have described them as promissory notes *of* the said bank.

2nd. That the notes alleged to have been stolen are not stated to have been of a bank duly incorporated.

3rd. That the said notes should have been described in said in-dictment as " due and unpaid."

4th. That the indictment is defective in matters of form and of law, and describes no legal offence.

The Mayor's Court sentenced him to two years imprisonment.

*S. Rush,* for the plaintiff in error, cited Act of thirtieth *January,* 1810, *Purd. Dig.* 821. 7 *Peters's Rep.* 164. *Spangler* v. *The Commonwealth,* 3 *Binn.* 533. *Stewart* v. *The Commonwealth,* 4 *Serg. & Rawle,* 194. 4 *City Hall Recorder, 32.* 13 *John.* 90.

*Dallas* (Attorney General,) for the commonwealth, referred to the act of the fifth of *April,* 1790, *Purd. Dig.* 818.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned in this case is, that the notes charged to have been stolen, are described as being "*on* the bank," &c. instead of "*of* the bank," &c. It may be questionable whether the description contended for would have been much more accurate, or

less free from criticism than the one adopted; at least it might have been thought by some liable to objection; for in the case of the *Commonwealth* v. *Boyer*, 1 *Binn.* 203, the counsel for the defendant took exception to the word "of," being used, where the word "on" is employed in the case before us; because it conveyed, as was said, the idea of the notes being the *property* of the bank, instead of their having been drawn by it.  Although it might have been more proper to have described the notes as drawn by the bank, yet we think that the description is perfectly intelligible, and such as admits of but one meaning, which is, that the notes charged to have been stolen were drawn by the Bank of the United States.  It is not necessary that the words or terms used in framing indictments, should be always such as have been adopted and approved by the best authors or lexicographers; it is sufficient if they have received from common use a fixed, precise and definite meaning, and according to such meaning import clearly what is sufficient to make out the charge, and to render it certain.  As if a man be indicted *for entry* into certain lands, and *mowing* an acre of *hay*, it is good, though it is not proper, because it is not *hay* but *grass* before mowing. 14 *Vin. Abr.* tit. *Indictment*, (N.) page 386, *pl.* 1.  So if it be for entry and mowing an *acre of corn*, it is good, though it had been more proper to say for mowing an acre *sown* with corn.  *Ibid. pl.* 2.  I do not therefore consider the first error sufficient to reverse the judgment.

The second error is, that the Bank of the United States, on which the notes charged to have been stolen are said to be, is not alleged to be duly *incorporated.*  The case of *Spangler* v. *The Commonwealth*, 3 *Binn.* 533, has been cited and relied on to support this exception. This court held in that case, that it ought to appear on the face of the indictment, when notes alleged to be stolen, are the notes of a bank, that the bank was incorporated, or lawfully authorized to draw and issue such notes.  It is necessary to observe, that the prosecution and decision in that case, were founded upon portions of acts of assembly which have since been repealed.  The act of the thirtieth of *January*, 1810, declaring that " the robbery or larceny of any bank note of any *incorporated* bank should be punished in the same manner as the robbery or larceny of any goods or chattels of equal amount," which was then in force, has since been repealed by an act of the tenth of *March*, 1817 ; which also enacts, that the "robbery or larceny of any promissory note or notes for the payment of money, shall be punishable in the same manner as the robbery or larceny of any goods or chattels."  And another act of the nineteenth of *March*, 1810, which was also then in force, declaring all unincorporated banks to be unlawful, and that all payments made or accepted in their notes should be null and void, has, as to this latter clause, been in some degree repealed by an act of the twenty-second of *March*, 1817, 6 *Smith's L.* 444, which declares and makes all such notes recoverable : thus making them of a value equal to their nominal amount. The act of the fifth of *April*, 1790, as well as the act of the tenth of

*March,* 1817, already in part recited, making the robbery or larceny of *any promissory note or notes for the payment of money* punishable in the same manner as the robbery or larceny of any goods and chattels, are clearly sufficient in terms to embrace or include notes issued for the payment of money by either incorporated or unincorporated banks. And since the notes of unincorporated banks have been made binding and recoverable, and by this means rendered as valuable as the notes of incorporated banks, or even those of individuals, no good reason can be given, I apprehend, why a distinction should be made, and why all should not be considered as comprehended within the terms of the last mentioned acts of assembly.    Indeed, if bank notes for the payment of money are not included within these acts of 1790 and 1817, there is then no act in force making it robbery or larceny to rob or to steal the notes of either incorporated or unincorporated banks ; for the act of 1810 which made it robbery or larceny to rob or steal bank notes of any incorporated bank, *eo nomine,* was repealed, as already stated, by the act of 1817.    But we think that promissory notes issued for the payment of money, by either incorporated or unincorporated banks, come within both the letter and meaning of the acts of 1790 and 1817, and that it is therefore larceny to steal either; and, of course, the second error is not sustainable.

The remaining error is, that the notes charged to have been stolen, are not described as being "due and unpaid."    In support of this, the *dictum* of the late Mr. Justice DUNCAN, in the case of *Stewart* v. *The Commonwealth,* 4 *Serg. & Rawle,* 195, and the indictments in one or two cases reported in *Rogers' Crim. Ca. (New York)* where the notes charged to have been stolen appear to be so described, have been referred to.    I consider even the *dictum* of that learned and eminent judge entitled to great respect, and sufficient at least to induce me to examine the matter closely, where it happens to be at variance with my own previous opinion on the subject, before I should be satisfied that I was right.    The only reason, I apprehend, that can be given for making such an averment necessary in respect to the notes is, to show that they are of real value : because if paid, it might be said, perhaps, in most cases, that they could therefore be of no real value ;  and that it would not only be oppressive and highly unjust, but contrary to the spirit of our penal code, to make them the subject of larceny.    It however, appears to me, that the description of the notes given in the indictment in this case, taken in connexion with the allegations therein contained in respect to them, show distinctly that they were of real, substantial value.    I do not consider it at all necessary that an express allegation should be made in the indictment, that the notes were unpaid at the time they are alleged to have been stolen, because that circumstance forms no part of the description of the notes given in the act of assembly itself, that are thereby made the subject of robbery or larceny.    If the legislature in describing the notes that were thereby intended to be made the subject of robbery and larceny had used the term "unpaid," I am

(M'Laughlin *v.* The Commonwealth.)

inclined to think that it would have been necessary to have used it also in the indictment, in describing the notes charged to have been stolen.   But it is most likely that the legislature, in forming the act, purposely omitted it, with a view of making it robbery or larceny to rob or steal from the bank itself, notes drawn and executed by it in the usual negotiable form for the payment of money, which had never been delivered out of the bank to any one, but retained still in its possession, ready, however, to be issued and paid out in the ordinary course of its business, or to rob or to steal notes of the bank from its own possession, which had been issued but taken up again and paid by it.   For I have no doubt, but the bank would be liable to pay notes thus stolen from it, after they had come into the hands of *bona fide* holders, although they might have received them from the thief himself.   Such an averment, it would seem, could not therefore be made with propriety in all cases, and especially in the cases of bank-notes, it does not appear to be necessary in order to make them always of real, substantial value.   Being in negotiable form, and for the payment of money, they are considered as part of the circulating medium of the country : and the man who is about to receive them in payment in the ordinary course of his lawful business, is no more bound to inquire how and by what means the holder came by the possession of them, and whether they were obtained from the bank by its consent or not, than he is bound to inquire of his debtor, who offers to pay him in dollars coined at the mint of the *United States,* how he came by them, and whether or not they were obtained lawfully from the mint.   If such an inquiry did not always prove equally unsuccessful as to both, it would unquestionably, to a great extent, defeat the all-important design of making them.   Hence I am led to believe, that the introduction of an averment into the indictment, that the notes of a bank charged to have been stolen, were *unpaid* at the time, is unnecessary, and not required by the act of assembly creating the offence.   By necessary inference, however, it does appear in this case, that the notes stolen were unpaid as to *Samuel Swartout,* who is stated to have been the proprietor of them, and that their value was of an amount equal to the aggregate sum of money for which they called on their face, which could not be if Mr. *Swartout* had received payment from the bank.

Judgment affirmed.