JOSEPH DUNCAN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

ARSON OF RAILWAY BRIDGE—ALLEGATION OF OWNERSHIP BY COR-
PORATION—EVIDENCE—DEMURRER TO EVIDENCE—VENUE.

1. An indictment charging the wilful and malicious burning of a bridge owned by a corporation is sufficient in its description of the owner when it gives the corporate name of the owner, and states in substance that the company named is a corporation doing business in this State. In such cases it is not necessary to allege in the indictment that such corporation was "duly organized or incorporated under the laws of any State or territory."

2. In the trial under an indictment charging the wilful and malicious burning of a bridge forming part of the roadbed of a railway company, named in the indictment as the owner of such bridge, the corporate *existence* of such alleged owner is sufficiently proven if it be shown that it was a corporation in existence *de facto*, and, *de facto* in the exercise of corporate functions and franchises, whether it was a corporation *de jure* or not.

3. In criminal cases when the accused has put himself upon the country by his plea of not guilty, he has made his election to be tried by jury, and upon his subsequent demurrer to the evidence, it is the right of the State to hold him to his election and to have the facts determined by a jury. In such cases it is discretionary with the State Attorney whether he will consent to take the facts from the jury by joining in such demurrer. The court in such case can not *compel* the State's counsel to join in such demurrer.

4. In criminal trials it is entirely discretionary with the court whether it will entertain a demurrer to the evidence, even though counsel for the prisoner and the State should both con-

sent to it. In such case, whether the court's refusal to entertain such demurrer can be made the subject of review by this court, *Quære?*

5. Where the evidence does not expressly locate the crime as having been committed in the county charged in the indictment, but there are in the evidence references to various localities and landmarks at or near the scene of the crime, known by or probably familiar to the jury, and from which they may have reasonably concluded that the offense was committed in the county alleged, it is sufficient proof of venue.

6. On a trial for the criminal burning of a bridge alleged in the indictment to be the property of a railroad corporation named therein, the proof of the *ownership* by such corporation is sufficient if it shows that such bridge forms part of the road-bed of the corporation named, and is in the actual use of such corporation in the passage of its trains.

7. Those structures forming parts of railway beds by which they span streams, chasms, ditches, etc., held to be "*bridges,*" the wilful and malicious burning of which are prohibited by section 4, page 358, McClellan's Digest.

Writ of error to the Circuit Court for Columbia county.

The facts in the case are stated in the opinion of the court.

*A. J. Hendry* for Plaintiff in Error.

FIRST ASSIGNMENT OF ERRORS.

It is contended on behalf of plaintiff in error that the court erred in refusing to quash, the second count of the indictment upon the defendant's motion; that there should be an allegation of due organization

and existence of the Florida Central and Peninsular Railway Company under the laws of some nation, State or Territory, it not being a corporation of which the court could take judicial notice of its charter. Whar. Cr. Pl. & Pr., sec. 110, and note. 45 N. W. R., 247.

### SECOND ASSIGNMENT.

It is contended that the court should have required the State's Attorney to join the defendant's demurrer, or refuse to do so. Without action on the part of the State's Attorney, the defendant was entitled to the judgment of the court as to whether the evidence, if taken as true, was sufficient in law to authorize a conviction, and to his discharge if it was not sufficient. The demurrer to the evidence called up the whole case for the judgment of the court, and the refusal thereof was error. Whar. Cr. Pl. & Pr., secs. 706 and 812 ; 2 Th. on M., 2242.

### THIRD ASSIGNMENT.

The motion for a new trial was on the following grounds : The verdict was contrary, 1st to the evidence; 2d, to the charge of the court ; 3d, to the law, and 4th, for other causes.

In the proof, there was failure of proof of venue of the act complained of. Nor does the evidence raise a violent presumption that the same was in Columbia county, where the trial was had ; Mary Ann Martin saw defendant two miles west from Lake City in said

county. According to the testimony of the State witnesses, Taylor and Jones, the act was committed half a mile west of where Martin saw defendant. It is submitted that this is not sufficient. Bish. Crim. Pro., sec. 1356 ; Cook vs. State, 20 Fla., 802 ; Evans vs. State, 17 Fla., 192.

The evidence does not show the ownership of the property alleged to have been burned.

The omission to prove which beyond a reasonable doubt is fatal to a conviction. Bish. Crim. Pro., sec. 488. Authorities unnecessary.

The structure alleged to have been burned was not a bridge in the meaning of the statute. McClellan's Digest, 358, sec. 4.

"Railway viaducts are not bridges, although it has been a subject of much discussion by the courts, it may be considered as settled by a majority of decisions that a railway viaduct, with no roadway or path over which a man or beast can travel, intended only for railway trains and the transportation of passengers, baggage, etc., is not a bridge, within the meaning of an act giving the exclusive right to erect and maintain a bridge, and take tolls, etc. Am. & Eng. Cyclo. Law Pg., 541. *A fortiori*, the railroad viaduct in the case at bar cannot be called a bridge in a criminal case where the liberty of a citizen is at stake." Bisb. Stat. Cri., sec. 194, *Ibid*, 216, 217 and 218.

The defendant in this case should have been indicted for malicious mischief, a misdemeanor. The act complained of, being a misdemeanor, could not be "tortured into a felony" merely by being indicted for such. Wood vs. State, 20 Fla.; 967.

*The Attorney-General* for Defendant in Error.

The motion to quash the second count of the indictment was properly overruled. It is not contended that the corporate name is not *truly* set forth. Wharton's Criminal Pl. & Pr., (8th ed.,) sec. 110. There is no necessity to aver incorporation, etc. 1 Leach, 253; Commonwealth v. Phillipsburg, 10 Mass., 70; Commonwealth vs. Dedham, 16 Mass., 141; People vs. McCloskey, 5 Parker Cr. Rep., 57, 334; People vs. Jackson, 8 Barb., 637; McLoughlin vs. Commonwealth, 4 Rawle, 464; Fisher vs. State, 40 N. J., (Law), 169; Johnson vs. State, 65 Ind., 204; Wharton's Cr. Law, (8th ed.), sec. 716.

Courts will take judicial notice of public statutes of their Legislatures. Wharton on Evidence, sec. 292-3.

Second assignment not well taken. No such thing as a demurrer to evidence in criminal cases allowable. The jury must pronounce on the *sufficiency* of the *facts*. A demurrer can be taken in criminal matters only to the indictment.

Third assignment of error. The evidence well supports the conviction. Venue was proven. The testimony of Mary Ann Morgan fixes the place "in Co-

lumbia county." Her language means nothing else.
The trestle or bridge was proven by a conductor of
the railroad company to be on the line of road, and of
course its property.

A railroad trestle or viaduct without footway for
passengers or passage for vehicles other than its cars,
is not a *bridge* in the sense that it is a continuation of
the *public highway*, whereon men and animals and
vehicles travel. But the word *bridge* in our statute
should·be held in this connection to include trestles
of railways. It is only where the building of a rail-
road trestle or viaduct across a river or stream might
have been prohibited by charters or statutes, giving
exclusive rights to the builders of bridges for a long
term of years, that the doctrine prevailed that they
were not bridges in the sense contemplated by the
statute when the bridge charter or franchise was
granted. Bishop on Statutory Crimes, sec. 301;
State vs. Gorham, 37 Me., 451; State vs. Gloucester,
11 Vroom, 302; Sussex vs. Strader, 3 Harrison, 108;
Bishop on Statutory Crimes, secs. 204, 212; But see
also *Ibid*, secs. 218, 190; Black's Law Dictionary,
"bridge;" Webster's Unabridged Dictionary, "tres-
tle."

TAYLOR, J.:

The plaintiff in error, Joseph Duncan, was indicted
at the Fall Term, 1891, of the Circuit Court of Colum-
bia county as follows, omitting the formal parts of the
indictment: "That Joseph Duncan, late of said

county, laborer, on the 17th day of May, A. D. 1891, at and in the county, circuit and State aforesaid, with force and arms did then and there unlawfully, wantonly and maliciously injure by setting fire to and burning the trestle of the Florida Central and Peninsular Railroad Company, a corporation doing business in the State of Florida, in such manner as to endanger the passage of the train of said company and throw the same from the track of said railroad. And the jurors aforesaid, upon their oaths aforesaid, do further say that the said Joseph Duncan at the time aforesaid, and in the county and State aforesaid, did then and there unlawfully, wilfully and maliciously set fire to and burn a bridge, the property of the Florida Central and Peninsular Railroad Company, a corporation doing business in the State of Florida, contrary," etc. The defendant was tried and convicted on December 2d, 1891, and from the judgment and sentence has taken writ of error to this court.

Before the trial the defendant, by his attorney, moved to quash the indictment on the following grounds :

"1st. The said indictment, in its first count, does not charge any criminal offense under the laws of the State of Florida.

"2d. The said indictment, in its second count, does not allege any person, either artificial, or natural, as owner of the bridge alleged to have been burned.

"3d. The indictment is otherwise so vague, indefi

nite and insufficient as to mislead the accused and to embarrass him in the preparation of his defense."

The court sustained this motion as to the first count in the indictment, but overruled it as to the second count, and this latter ruling is assigned as the first error.

In urging this assignment here the defendant's counsel abandons the ground upon which his motion was made in the court below, that is, "that the indictment did not allege any person, either artificial, or natural, to be the owner of the burned bridge," but instead thereof, contends here that this count of the indictment is defective because it fails to allege the "due organization and existence of the Florida Central and Peninsular Railroad Company under the laws of some nation, State or Territory," that company being the one alleged in the indictment to be the owner of the bridge burned. There is no merit in this contention. The indictment is found under sec. 4, p. 358, McClellan's Digest. The gist of the offense is the wilful and malicious burning of such a structure that is useful to another, or, it may be, to the public; the validity of the tenue by which it is owned, or the legal right of the alleged owner *to own* such a structure, does not enter into or form any feature of the offense. The naming of the owner is material only as a part of the *description* or *identification* of the thing burned as being within the prohibition of the statute. We apprehend that in such cases, even if the alleged owner, the Florida Central and Peninsular Railroad Company, was

not a corporation *de jure* it would be sufficient to show that it was a corporation *de facto* in the actual exercise of its functions as such, and that the bridge burned was in its actual use and control as part of its roadbed, necessary to the passage of its trains. It would, indeed, be a monstrous proposition that a party should be allowed to burn the bridges from under a railroad in actual operation, periling life and property with indiscriminate recklessness, and then be allowed to go scot free because the company operating such road had omitted to track the law in some particular in proceeding to acquire corporate existence. In such cases it is necessary only to allege in the indictment, in substance, that the company is a corporation, without any allegation as to the legality or regularity or fact even, of its corporate organization. People vs. Jackson, 8 Barb., 637. In Owen vs. State, 5 Sneed (Tenn.), 493, where the party was indicted for the fraudulent possession of counterfeit banknotes of the Bank of Tennessee, and where the indictment did not allege either that the bank was a corporation or was duly chartered, it was held, that in such cases it was not necessary either to aver or prove the corporate existence of such institutions ; but, being a public char·tered institution of that State, its courts would take judicial knowledge thereof, and that what is judicially known, need not be averred or proved. McLaughlin vs. Commonwealth, 4 Rawle, 464 ; Fisher vs. State, 40 N. J. (Law), 169. In Johnson vs. State, 65 Ind., 204, it is held that " an indictment for arson, charging the burning of property insured against loss by fire by an

insurance company designated by a name apparently indicating it to be a corporation, need not affirmatively aver its corporate existence, nor whether it is a domestic or foreign corporation." State vs. Van Hart, 17 N. J. (Law), 327 ; State vs. Weller, 20 N. J. (Law), 521. There is some conflict in the decisions upon this question, but the greater weight of the authorities, and, as we think, founded upon the better reasoning, is, that in such cases it is not necessary to aver in the indictment that the corporation alleged to be the owner "was incorporated," or "was duly incorporated." It is sufficient if the indictment states simply that it is a corporation ; and the proof of this allegation in such cases we think is sufficient, if it shows that the company named was *de facto* in existence, and, *de facto* exercising corporate functions and franchises.

After the State had introduced her evidence and rested, the defendant introduced no testimony, but stated orally to the court, through counsel, that he demurred to the evidence of the State, and demanded judgment of the court whether the State's evidence, if true, was sufficient in law to convict him of the crime charged. Upon this the court ruled that the question raised was one of fact for the jury, and not of law for the court to decide, and declined to entertain the demurrer, and this ruling is assigned as the second error. In urging this assignment it is contended for the defendant that the court should have required the State Attorney to join in the defendant's demurrer, and that the defendant was entitled to the judgment of the court as to whether the evi-

dence, if taken as true, was sufficient in law to authorize a conviction. We do not understand the law to be in criminal cases that the court was obliged either to entertain the demurrer to the evidence, and thereby take the case from the jury, both as to its facts and the law applicable to them, or to compel the State Attorney - to join in such demurrer. When the accused put himself upon the country by his plea of not guilty, he has exercised his right guaranteed to him by our Constitution, of having the facts of his case passed upon by a jury; and, having, by his plea, made his election thus to be tried, it is the right of the State to hold him to his election and to have the facts determined by a jury, and not by the court, whose functions is to determine the law of the case. In such cases it is discretionary with the State Attorney whether he will consent to take the case from the jury and submit it for decision to the court by joining in such a demurrer. The established rule is, that the party demurring to evidence must admit on the record, not only that all the facts proven are true, but that every fact is also true that may fairly and reasonably be inferred from or deduced out of the evidence, or that the evidence reasonably tends towards establishing; if the demurrer will do this, and the State Attorney in his discretion, consents that the facts thus admitted shall be submitted to the court for its judgment as to whether under the law they will authorize a conviction of the crime charged, then the State Attorney can exercise his consent by joining in

such demurrer. But we do not understand that it is the province of the court to *compel* the State Attorney to give his consent by joining in the demurrer. We think, too, that it is entirely discretionary with the court whether it will entertain a demurrer to evidence in criminal cases and thereby take upon itself the performance or responsibilities devolving upon the jury, as well as those inherent in itself, even although the counsel for both the prisoner and the State should consent to it. And we doubt very much whether the court's refusal to do so can be made the subject of review in this court where its refusal is *in limine* upon a demurrer to evidence when the same result can be accomplished afterwards by motion for new trial, or in arrest of judgment. Gibson & Johnson vs. Hunter, 2 H. Blackstone's Rep., 187 ; State vs. Soper, 16 Maine, 293. In Fowle vs. Common Council, 11 Wheaton, 320, Judge Story delivering the opinion of the court says: " The case made for a demurrer to evidence is, in many respects, like a special verdict. It is to state facts, and not merely testimony which may conduce to prove them. It is to admit whatever the jury may reasonably infer from the evidence, and not merely the circumstances which form a ground of presumption. The principal difference between them is, that upon a demurrer to evidence a court may infer, in favor of the party joining in demurrer, every fact of which the evidence might justify an inference ; whereas upon a special verdict, nothing is intended beyond

the facts found." Young vs. Black, 7 Cranch, 565 ; Commonwealth vs. Parr, 5 Watt's & Serg., 345 ; Higgs vs. Shehee, 4 Fla., 382 ; Doss vs. Commonwealth, 1 Gratt., 557 ; Brister vs. State, 26 Ala., 107.

The third assignment of error is, that the court erred in overruling the motion for new trial. The motion for new trial was upon the ground that the verdict was contrary to the law, the evidence and the charge of the court. Under this assignment it is contended that there was not sufficient proof of *venue*. Referring to the evidence sent up in the bill of exceptions we find that the burned bridge is located by one witness as being "about the 62½ mile post from Jacksonville, about 2½ miles west from Lake City." In Bryan vs. State, 19 Fla., 864, it is held that if the evidence raises a violent presumption that the offense was committed in the county charged it is sufficient. In Andrews vs. State, 21 Fla., 598, it is held, in addition to the above, that if it may be reasonably inferred from the evidence that the crime was committed in the county alleged, it is sufficient. In the case last cited there was no statement affirmatively placing the crime in the county alleged, but there were, in the evidence, references to various localities and land-marks at or near the scene of the crime, that, the court says, were known by or probably familiar to the jury, from which, under the liberal rule laid down by the courts, they may have reasonably concluded that the offense was committed in that county. Applying this rule to the facts of the case before us, we think that the proof of *venue* was

amply sufficient.   The scene of the crime is located on
the Florida Central & Peninsular Railroad, two and a
half miles west of Lake City, the county site of Co-
lumbia county.   From this the jury could, not only
reasonably *infer* that it was in that county, but the
statement, with the jury's knowledge of location,
amounted almost to positive proof of the fact.

Under the last assignment of error it is also con-
tended that the evidence does not show the ownership
of the property alleged to have been burned.   In the
testimony we find the following from the State's wit-
ness, H. L. Taylor :  " I am a conductor in the employ
of the Florida Central and Peninsular Railroad.   On
May 17th, 1891, I was in charge as conductor of a pas-
senger train *on said road*.   The train was going east,
about the 62½ mile post from Jacksonville, about
two and a half miles west from Lake City, for some
cause the train stopped.   I went forward and found
that some one had set fire to a bridge under and sup-
porting the railroad track, which bridge was on fire.
The fire had been set to a stringer on one side of the
railroad track, the stringer was on fire, and would have
burned in two."    Here we have this witness testifying
that he at the time of this crime was in the employ of
one of our well-known railway corporations as conduc-
tor of one of its passenger trains *" on said road."*
His train coming to a stop  he went forward and found
that some one had set fire to a bridge under and sup-
porting *the railroad track*.   He had before mentioned
the Florida Central and Peninsular Railroad, and was
talking only about the road of that company ; then he

identifies the bridge as being under and supporting the track of that road. This we think clearly proved the bridge to be a part of the roadbed of the Florida Central and Peninsular Railroad Company, and that its ownership of the bridge in question was thereby suffi-ciently shown to leave no room for a reasonable doubt on the subject. And we think, too, from this evidence, that it was sufficiently shown that the company named was *de facto* in existence, and *de facto* exercising cor-porate functions in operating trains over its road.

It is further contended that railway viaducts are not "bridges," within the meaning of the statute under which this indictment was found. The well-established rule is, that the *words* of a statute are to be under-stood according to their ordinary meaning in the sense in which they best harmonize with the subject of the enactment and the *object* which the Legislature had in view in enacting the law. Endlish on the Interpreta-tion of Statutes, sec. 73. The *object* of the statute under consideration was to prohibit incendiarism in all its forms, and to prescribe punishments therefor. In enumerating the divers objects or structures that might become the subject of the crime, the word "bridge" is included. The gravamen of the offense consists in the malicious and wilful burning; and we think the ob-ject of the statute was to prohibit the burning of any structure to which the term "bridge" could be appro-priately applied. Turning to Webster's Dictionary, we find the word "bridge" defined to be: "A struc-ure, usually of wood, stone, brick, or iron, erected

over a river or other watercourse, or over a chasm, railroad, etc., to make a passage-way from one bank to the other. Anything supported at the ends, which serves to keep some other thing from resting upon the object spanned, which forms a platform or staging over which something passes or is conveyed." This expresses, to our minds, very clearly and concisely the definition of a bridge, in the sense in which the word is ordinarily used and understood, and we think applies with emphasis to those structures forming parts of our railway beds by which they span streams, chasms, ditches, etc. Certainly no bridge can be burned that would be more mischievously disastrous in its consequences than the one intended to support the rapidly passing train freighted with human life. Our only surprise is that a severer punishment is not prescribed for the burning of such structures, than for that of the bridge spanning the ordinary wagon way. Enfield Toll Bridge Co. vs. Hartford and New Haven R. R. Co., 17 Conn., 40 ; State vs. Gorham, 37 Maine, 451 ; Bishop on Statutory Crimes, sec. 301.

We find no error in the record, and the judgment of the court below is, therefore, affirmed.