**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

AKUNNA BAIYINA EJIOFOR,

     Defendant - Appellant.

No. 17-6211
(D.C. No. 5:16-CR-00029-D-2)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **KELLY**, and **McHUGH**, Circuit Judges.
_____

Defendant-Appellant Akunna Baiyina Ejiofor was convicted by a jury of

conspiracy to commit wire fraud, aggravated identity theft, and multiple counts of wire

fraud. 18 U.S.C. §§ 1349, 1028A(a)(1) & 1343. She was sentenced to a total term of

imprisonment of 84 months, three years' supervised release, and ordered to pay

restitution of $4,678,302.79. See 2 R. 288–94. She now appeals, challenging the denial

of her motion to suppress and arguing that a search of her apartment was not supported

by probable cause, that the good faith exception to the exclusionary rule does not apply,

and that all derivative evidence including her incriminating statements ought to be

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

suppressed. She maintains that the government will not be able to prove that the evidence obtained was harmless beyond a reasonable doubt, and thus her convictions must be vacated and the case remanded for a new trial. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

**Background**

The Federal Bureau of Investigation (FBI) searched Ms. Ejiofor's apartment at 2255 Eldridge Parkway in Houston, Texas. See 1 Aplt. Supp. R. at 4. Previously, FBI Special Agent Christine Beining sought a search warrant for two residences in Houston, one of which was Ms. Ejiofor's apartment. Id. According to the affidavit supporting the application for the warrant, one Edward Peter Duffey preyed on various women on various dating websites ("the scheme"). Id. at 7–22. After some weeks of corresponding with several of the victims by telephone and text message, Mr. Duffey professed his love for them. Id. at 7, 13–14. Some victims received a call, purportedly from Mr. Duffey's daughter, expressing happiness about the newfound relationships.[1] Id. at 7, 19–20.

Perhaps believing that flowers are the fastest way to the heart, Mr. Duffey purchased flowers for many of his victims. Id. at 7, 10–11, 16, 19. One of the credit card numbers he used was connected to a prepaid debit card with no account holder information. Id. at 26. However, an individual had used the card on April 30, 2015, just

---

[1] One of the victims saved a voice-mail message from the "daughter" that was played at trial and identified as Ms. Ejiofor's voice. See 4 R. 180–81, 273–75, 356–57.

several days after a flower purchase, to make a purchase from an iTunes account

registered to a Linda Poll.  Id. at 11, 26–27.  According to the affidavit:

> On January 13, 2016, [FBI Special Agent Timothy J. Schmitz] conducted a search of the CP Clear commercial database for Linda Poll and 3455 Wolton, Houston, Texas 77077.  The search resulted in no information leading SA Schmitz to believe the name and address associated with iTunes account 389355873 to be fictitious.

Id. at 27.  On July 1, 2015, someone made a purchase on that same iTunes account using

an Internet Protocol (IP) address belonging to Ms. Ejiofor at 2255 Eldridge Parkway.  Id.

Soon after he began to communicate with his victims, Mr. Duffey invariably

inquired about their investments.  Id. at 8–9, 13, 17, 19–21.  Mr. Duffey told the victims

that he was friends with then–U.S. Securities and Exchange Commission (SEC)

Chairwoman Mary Jo White,[2] that the SEC was investigating the victim's bank or asset

manager, and that the victim should therefore transfer her funds to Mr. Duffey for him to

invest.  Id. at 8, 10, 13, 18.  A woman purporting to be Mary Jo White called some of the

victims to confirm the investigation and to encourage them to invest their money with

Mr. Duffey.  Id.  Many of the victims wired money to Mr. Duffey, after which Mr.

Duffey ceased communications.  Id. at 8–9, 14, 21–22.

Some victims reported that Mr. Duffey instructed them to wire money to April

Cummings, whom Mr. Duffey represented worked at his investment firm.  Id. at 12–15,

22–23.  Ms. Cummings claimed she had met a man named John Alex Cole, who

purported to be a teacher at an orphanage in Kuwait, on a dating website.  Id. at 14.  Mr.

---

[2]  In one instance, Mr. Duffey represented that he was a friend of "Mary Jo Weiss," a member of the SEC's investigative committee.  1 Aplt. Supp. R. at 10.

Cole had asked her to assist in collecting funds to aid the orphanage.  Id.  From 2014 through 2015, at Mr. Cole's instruction, Ms. Cummings transferred money she received from the victims communicating with Mr. Duffey into accounts designated by Mr. Cole.  Id. at 12, 14–15, 22.  One such account had been opened on September 17, 2015, by Anthony Benson and had received $50,000 in three installments from Ms. Cummings in early October 2015.  Id. at 23–24.  FBI investigations revealed that Mr. Benson was a Nigerian national who had arrived in Houston, Texas, by way of Zurich, Switzerland, on September 4, 2015.  Id. at 25.  His intended address upon arrival was 3347 Chartreuse Way in Houston, at which Ken E. Ezeah resided.  Id. at 26.

The affidavit supporting the application for a search warrant also describes an "employment scam."  Id. at 27.  In June 2015, a Community First Federal Credit Union (CFFCU) customer deposited a counterfeit check into her CFFCU account and immediately withdrew the funds.  Id. at 28.  On June 22, 2015, that customer deposited two payments totaling $5,500 into a Bank of America (BOA) account, which Mr. Ezeah opened in October 2010 on behalf of Fabross Property Ventures, Inc., of which he was the president.  Id.  That same day, Mr. Ezeah transferred $3,000 from that BOA account to his personal BOA checking account.  Id.  On June 23, 2015, Mr. Ezeah transferred $200 from his BOA checking account to Ms. Ejiofor.  Id.  He had also transferred $500 from that account to Ms. Ejiofor on June 15, 2015.  Id.

Finally, the affidavit referenced cell tower data showing that the telephone number Mr. Duffey used to communicate with two of the victims was used "in close proximity" to 2255 Eldridge Parkway and to 3347 Chartreuse Way.  Id. at 28–29.

4

In light of the above facts, the agent sought authorization to seize, among other items, computer hardware and associated peripherals, mobile telephones, and credit, debit, and ATM cards located at 3347 Chartreuse Way and at 2255 Eldridge Parkway. Id. at 29–32. On January 25, 2016, a magistrate judge in the Southern District of Texas issued a search warrant for 2255 Eldridge Parkway, which FBI agents executed on January 27, 2016. Id. at 4; 4 R. 465. There, they discovered a notebook containing email addresses, aliases, and passwords associated with dating websites. 4 R. 469–76. The agents also discovered debit cards that were used to purchase many of the flowers and to create or renew approximately 19 fake online dating profiles involved in the scheme. Id. at 539, 546. During the search, Ms. Ejiofor admitted to an FBI agent her integral role in the scheme with Mr. Ezeah. Id. at 45–49. FBI agents executed a search warrant for 3347 Chartreuse Way that same day, where they seized multiple mobile telephones, id. at 85–90, and debit cards used in the scheme. Id. at 214–15.

On June 22, 2016, a federal grand jury in the Western District of Oklahoma indicted Mr. Ezeah and Ms. Ejiofor on 20 counts of aggravated identity theft, wire fraud, and conspiracy to commit wire fraud. 1 R. 40–52. Mr. Ezeah moved to suppress evidence against him pursuant to Franks v. Delaware, arguing that the underlying affidavit "recklessly create[d] a false impression that he was involved in the [employment scam at CFFCU] and consequently was involved in the romance scheme at issue in this case." United States v. Ezeah, No. CR-16-29-D, 2016 WL 7410735, at *2 (W.D. Okla. Dec. 22, 2016). The district court discussed the above facts from the affidavit and denied Mr. Ezeah's motion, holding, inter alia, that he failed to show that the agent knowingly or

5

recklessly omitted information that would have vitiated probable cause. Id. at *3–4. The district court further held that the affidavit established a sufficient nexus between Mr. Ezeah's residence and the criminal activity, and that the magistrate judge had not erred in concluding that there was probable cause to support issuing the search warrant. Id. at *3.

As noted, Ms. Ejiofor also moved to suppress evidence seized pursuant to the search warrant and statements she made after the execution of those searches as derivative evidence, arguing that the affidavit was insufficient. See 1 R. 115 (Motion to Suppress); United States v. Ezeah, No. CR-16-29-D, 2016 WL 7429131, at *1 (W.D. Okla. Dec. 22, 2016). In a separate order filed the same day as the denial of Mr. Ezeah's motion to suppress, the district court denied Ms. Ejiofor's motion to suppress, holding that "[f]or the same reasons set forth in the Court's Franks Order," there was sufficient probable cause to search Ms. Ejiofor's apartment, and that the magistrate judge did not err in issuing the warrant. Ezeah, 2016 WL 7429131, at *1.

## Discussion

On appeal from the denial of a motion to suppress, we view the evidence in the light most favorable to the government. United States v. Roach, 582 F.3d 1192, 1200 (10th Cir. 2009). If the validity of a search warrant is questioned, we review de novo. United States v. Pulliam, 748 F.3d 967, 970–71 (10th Cir. 2014). Our review is limited to the facts presented in the affidavit. Roach, 582 F.3d at 1200. We do not engage in "after-the-fact scrutiny" of the affidavit's sufficiency. Illinois v. Gates, 462 U.S. 213, 236 (1983). Instead, our review affords deference to the probable cause determination of

6

the magistrate judge while ensuring that the affidavit provides a substantial basis for issuing the warrant.  Pulliam, 748 F.3d at 971.  Only where no substantial basis exists for probable cause do we disturb that determination.  Roach, 582 F.3d at 1200.

**A.     The Affidavit Supporting the Search Warrant Alleged Facts Sufficient to Establish Probable Cause**

Ms. Ejiofor argues that the affidavit showed at most that she knew individuals who may have been involved in criminal activity.  Aplt. Br. at 31.  In particular, she focuses on three facts connecting her to the scheme — (1) the iTunes account registered to Linda Poll that was associated with both the flower purchases and Ms. Ejiofor's IP address; (2) the transfer of funds from Mr. Ezeah's bank account to Ms. Ejiofor; and (3) the cell tower records showing that a telephone number connected to the scheme was used in close proximity to both Mr. Ezeah's and Ms. Ejiofor's residences.  Id.  She maintains that none of these facts establish a sufficient nexus between the scheme and her apartment.  She offers ready alternative explanations.  For example, Mr. Ezeah's payment of $200 to Ms. Ejiofor the day after he received funds from the employment scam could have been unrelated to either that scam or the scheme, a point further bolstered by his $500 payment to Ms. Ejiofor prior to that scam.  Aplt. Reply Br. at 5.  Or, because there was no information indicating "Linda Poll" was a fictitious alias, Ms. Poll could have been Ms. Ejiofor's friend, acquaintance, visitor, or even a stranger who used her WiFi from nearby.  Aplt. Br. at 36.  Ms. Ejiofor also challenges the significance of the cell tower data by arguing that many residences could have been said to be in "close proximity" to the telephone number associated with the scheme.  Id. at 37.

7

We should be reluctant to disturb a magistrate judge's probable cause determination merely because facts supporting a search warrant are susceptible to alternative, innocent explanations. Cf. United States v. Arvizu, 534 U.S. 266, 274 (2002) (holding that innocent explanations of a suspect's conduct do not vitiate reasonable suspicion). Probable cause exists if there is "a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. An affidavit submitted in support of a warrant must show a "minimal nexus between the place to be searched and the suspected criminal activity." United States v. Gonzales, 399 F.3d 1225, 1231 (10th Cir. 2005) (emphasis added). Importantly, a judge issuing a warrant may go beyond the facts contained in the affidavit to make common sense, reasonable inferences from those facts. United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). Of course, an affidavit containing "wholly conclusory statement[s]" cannot give rise to probable cause, Gates, 462 U.S. at 239, nor can an issuing judge "arrive at probable cause simply by piling hunch upon hunch." United States v. Valenzuela, 365 F.3d 892, 897 (10th Cir. 2004).

Here the factual basis connecting Ms. Ejiofor's apartment to the scheme is adequate when judged by these standards — the affidavit contained more than mere "supposition and hunches," as Ms. Ejiofor contends. Aplt. Br. at 32. Its account of the payments to Mr. Benson, who at one time intended to reside at Mr. Ezeah's house, and of Mr. Ezeah's apparent connection to an employment scam, created an inference of Mr. Ezeah's fraudulent conduct. It further connected Mr. Ezeah to Ms. Ejiofor by describing payments to her, at least one of which appeared to have been tainted by fraud. And, as

8

the government argues, investigators knew that at least one woman was connected to the scheme because some of the victims received a phone call from a woman purporting to be either Mary Jo White or Mr. Duffey's daughter. Aplee. Br. at 14.

The affidavit also connected multiple flower purchases (a recurring and integral part of the scheme) to a prepaid debit card associated with an iTunes account that someone used while on Ms. Ejiofor's internet connection. Ms. Ejiofor places substantial weight on the affidavit's account of Linda Poll, arguing that the affidavit indicated that Linda Poll's name and address were <u>not</u> fictitious. <u>See</u> Aplt. Reply Br. at 4–5. But an equally plausible reading of the affidavit suggests that the agent believed the name and address <u>were</u> fictitious because the agent's search revealed no information about Ms. Poll. Viewing the evidence and its inferences in a light most favorable to the government, as we must on appeal, we cannot agree with Ms. Ejiofor's characterization of the affidavit.[3]

Based upon the facts discussed above, the district court did not err in upholding the search warrant. Entirely reasonable inferences of probable cause could have been drawn from the totality of the circumstances as described in the affidavit.[4]

---

[3] Alternatively, under Ms. Ejiofor's reading, the affidavit still states that Ms. Poll's iTunes account was linked to Ms. Ejiofor's apartment and a flower purchase in furtherance of the scheme.

[4] Insofar as the district court did not clearly explain its reasoning for affirming the magistrate judge's probable cause determination as to Ms. Ejiofor's apartment, it nevertheless mentioned in its <u>Franks</u> order all of the facts discussed above. <u>Ezeah</u>, 2016 WL 7410735, at *1–2. But even if the district court did not adequately consider the facts as they related to Ms. Ejiofor, this court is not tethered to the reasoning of the district court, as the determination of the sufficiency of a search warrant is a conclusion of law

9

**B.     The Agents Relied in Good Faith on the Sufficiency of the Warrant**

Ms. Ejiofor also argues not only that each of the three facts discussed above have innocent explanations, but that the defects with respect to each of them were "glaringly obvious" from the face of the affidavit. Aplt. Br. at 45. Because, she reiterates, the affidavit failed to provide a minimal nexus between the scheme and her apartment, the agents could not possibly have relied on the validity of the warrant in good faith. Id. at 47–48. However, even if this court were persuaded by her argument that the search lacked probable cause, the magistrate judge's determination was grounded in a sufficient factual basis such that the agents relied on the search warrant in good faith.

The exclusionary rule serves to protect defendants by deeming inadmissible any derivative evidence, often called "fruit of the poisonous tree," obtained as a result of an unlawful search. See Wong Sun v. United States, 371 U.S. 471, 487–88 (1963). The rule is based upon its deterrent effect. United States v. Leon, 468 U.S. 897, 916 (1984). However, the exclusionary rule has no deterrent effect on law enforcement officers who rely in good faith on a subsequently invalidated warrant. Id. at 918. When determining whether officers acted in good faith, a reviewing court presumes reasonable knowledge of the law, and assesses objectively whether a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Gonzales, 399 F.3d at 1230 (quoting Leon, 468 U.S. at 922 n.23). An officer cannot be said to have

---

that we review de novo. United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000).

acted in good faith if the warrant and underlying documents are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 1229 (quoting Leon, 468 U.S. at 923).

There is a presumption that an executing officer acts in good-faith reliance on a warrant's validity. United States v. Augustine, 742 F.3d 1258, 1262 (10th Cir. 2014). "This presumption, though not absolute, 'must carry some weight.'" United States v. Harrison, 566 F.3d 1254, 1256 (10th Cir. 2009) (quoting United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985)). When an affidavit "describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place," we have found objectively reasonable reliance on an affidavit's establishment of a nexus. Augustine, 742 F.3d at 1263 (quoting United States v. Campbell, 603 F.3d 1218, 1231 (10th Cir. 2010)); see also United States v. Chambers, 882 F.3d 1305, 1312–13 (10th Cir. 2018). Because the affidavit included facts that connected Ms. Ejiofor and her apartment to the scheme, and because it is reasonable to believe that mobile telephones, computers, and credit cards could be found in Ms. Ejiofor's apartment, this also supports our conclusion that the FBI agents acted in good-faith reliance on the sufficiency of the search warrant.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

11