**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

KEITH SCOTT PULLIAM, a/k/a Keith
Scott Drew,

　　　　Defendant - Appellant.

No. 13-1026

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:11-CR-00378-CMA-1)** *

---

Submitted on the briefs:

Boston H. Stanton, Jr., Attorney at Law, Denver, Colorado, for Defendant - Appellant.

John F. Walsh, United States Attorney, James C. Murphy and Kurt J. Bohn, Assistant
U.S. Attorneys, Denver, Colorado, for Plaintiff - Appellee.

---

Before **BRISCOE** Chief Judge, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

---

　　* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.

**O'BRIEN**, Circuit Judge.

Keith Scott Pulliam was indicted on charges of being a felon in possession of a firearm and being an armed career criminal. He moved to suppress the fruits—several firearms—of a search of his home. Pertinent to this appeal, he claimed the application for the search warrant, issued by a state court judge, did not demonstrate probable cause and the search by state officers was unreasonably executed. After the district judge denied his suppression motion he pled guilty under a plea agreement, which reserved his right to appeal from the denial. The judge accepted the plea and sentenced Pulliam to imprisonment for 75 months. Exercising his reserved right, Pulliam now brings this appeal. We affirm.

## BACKGROUND

Colorado police officers executed the search warrant issued by a Colorado state court judge. After the search was complete, they left the warrant itself and an inventory of the property taken. The inventory was hand written on the back of the warrant. The officers did not leave the attachments to the warrant: the affidavit submitted to obtain the warrant (Attachment A) or the list of items to be seized. (Attachment B).[1]

---

[1] The substance of Attachment B is reproduced, *infra*.

## DISCUSSION

Pulliam contends the evidence from the search should be suppressed because (1) the search warrant was issued without a showing of probable cause; (2) the warrant lacked the particularity required by the Fourth Amendment; and (3) police failed to give him a complete copy of the search warrant as required under Fed. R. Crim. P. 41(f) and the terms of the warrant.

"[T]he ultimate determination of reasonableness under the Fourth Amendment is a question of law," an issue we review de novo. *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). However, as part of our de novo review, we "accept[] the district court's factual findings unless they are clearly erroneous" and "view[] the evidence in the light most favorable to the government." *Id.* "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998). We "must uphold any district court finding that is permissible in light of the evidence." *Id.* at 813.

A. Constitutional Issues

      1. Probable Cause

Pulliam argues the warrant application was deficient because it contained unreliable and uncorroborated statements from an informant who was untested and dishonest. In Pulliam's view, these statements failed to establish probable cause to search. The district judge disagreed; so do we.

Although our review of the district judge's analysis of the validity of the warrant is de novo, both this Court and the district court must accord "great deference" to the probable-cause assessment of the state court judge who issued the warrant. *United States v. Biglow*, 562 F.3d 1272, 1280-81 (10th Cir. 2009). Our review is limited to "ensur[ing] the Government's affidavit provided a substantial basis" for the issuance of the warrant. *Id.* at 1281 (quotation marks omitted). Accordingly, even in a "doubtful or marginal case," we defer "to the [magistrate's] determination of probable cause." *Id.* at 1282.

Probable cause refers to "a probability or substantial chance of criminal activity," *id.* at 1281, based on the "'commonsense' [and] 'practical considerations of everyday life.'" *Id.* at 1281 (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). When assessing probable cause, we look to the totality of the circumstances as detailed in the affidavit accompanying the application for the search warrant. *Gates*, 462 U.S. at 230; *see id.* at 236.

To the extent the application relies on the statements of an informant, we pay close attention to the veracity, reliability, and basis of knowledge of the informant about the target of the proposed search. *Id.* at 230. Here, the affidavit supporting the application for the warrant was based on the statements of an informant who demonstrated sufficient veracity, reliability, and basis of knowledge. As the district judge noted, the identity of the informant, Andre Herring, was known to the police at the time he made his

- 4 -

statements.[2]  Police encountered him as a suspect in a burglary.  In addition to taking

police to his own home to recover stolen property, he volunteered to provide information

about the others involved in the burglary in return for lenience.  Based on his assertions

that stolen property could be found at a particular address, police searched the location

and discovered the items, just as Herring had predicted.  Herring was released to uncover

more information about the stolen items.  When he returned, he gave the police another

address where stolen items could be found.  When the police searched this address, they

again discovered stolen property.  Later, Herring told officers a revolver from another

burglary could be found at Pulliam's residence.  The affidavit for the warrant named

Herring as the informant and described how his tips had reliably led police to contraband

in the past.  As regards to information specifically pertaining to Pulliam, the affidavit also

set forth the basis for Herring's personal knowledge of Pulliam's possession of guns.  The

affidavit included Herring's detailed description of his sale of a handgun to Pulliam and

that he had witnessed Pulliam in possession of firearms on several occasions.  The

issuing judge obviously considered Herring's statements sufficiently reliable for a search

warrant.  The reviewing district judge concluded they gave the issuing judge a substantial

---

[2] This alone is one indicator of veracity and reliability.  *See United States v. Johnson*, 364 F.3d 1185, 1190 (10th Cir. 2004) ("A tipster who refuses to identify himself may simply be making up the story, perhaps trying to use the police to harass another citizen.").  Indeed, as the district judge observed, since Herring's cooperation was fueled by his hope of earning lenient treatment from the police and prosecutors, he had a powerful incentive to provide accurate information.

basis, *see Biglow*, 562 F.3d at 1280-81, to conclude there was probable cause to search Pulliam's home. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000) (corroboration allows police to "test the informant's knowledge [and] credibility" thereby ensuring reliability); *see also United States v. Hauk*, 412 F.3d 1179, 1188 (10th Cir. 2005) (discussing the special concerns attendant to the statements whose identity is not known). Indeed, under these circumstances, Pulliam's characterization of Herring as "new" and "untested" is unwarranted. (Appellant Br. 11.) We see no error.

2. Particularity

Pulliam's argument that the warrant violated the Fourth Amendment's particularity requirement has two prongs: (1) the warrant did not sufficiently (particularly) describe the items to be seized, and (2) the copy of the warrant given to him impermissibly omitted the attachment containing the list of places to be searched and items to be seized.

The Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Fourth Amendment's "particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) (citation omitted). "[A] warrant that describes the items

to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* (citation omitted). And the warrant may cross-reference other documents, such as the affidavit in support of the application, to satisfy the particularity requirement. *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011).

Here, the warrant to search Pulliam's home expressly referred to Attachment B to describe the targets of the search. Attachment B detailed the following targets:

1. Any and all firearms and ammunition.

2. Any and all firearm manufacturer packing materials receipts and transfer documents.

3. All items of indicia for proof of ownership and occupancy for the address identified as 1935 Carmel Dr 103, which is located in the City of Colorado Springs, County of El Paso and State of Colorado is a first floor apartment within a multi-family dwelling . . . .

(R. Vol. 1 at 48.) The district judge concluded Attachment B was sufficiently particular "because defendant is a convicted felon . . . [m]eaning that any and all firearms he possesses constitute a crime." (R. Vol. 2 at 148 (quotation marks omitted).) We agree. The police knew of Pulliam's felony conviction when they sought the warrant and disclosed his status to the state court judge in their application for the search warrant. Since Pulliam was a felon, and both the police and the issuing judge knew it, any guns in his possession were contraband. No specific description of a gun was necessary.

Pulliam also claims the copy of the warrant provided to him after the search violated the Fourth Amendment's particularity requirements because it lacked

"Attachment B," which particularly described the items to be seized. According to him, disclosure is necessary to allow the person or persons targeted by the warrant to ensure police adhere to the scope of the searches and seizures identified in the warrant. In support he cites *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1026-27 (9th Cir. 2002), where the Ninth Circuit endorsed this rationale. However, since the Ninth Circuit decided *Ramirez*, the Supreme Court has abrogated this line of jurisprudence. In *United States v. Grubbs*, it explained:

> "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches." *United States v. Stefonek*, 179 F.3d 1030, 1034 ([7th Cir.] 1999) (citations omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, ex ante, the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police," *Wong Sun v. United States*, 371 U.S. 471, 481–482 (1963), and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages.

547 U.S. 90, 98 (2006) (parallel citations omitted); *see also United States v. SDI Future Health Inc.*, 568 F.3d 684, 701 (9th Cir. 2009) (recognizing *Grubbs* abrogated the Ninth Circuit's requirement that "officers . . . present any curative document . . . to the persons whose property is to be subjected to the search."). In short, under *Grubbs*, persons targeted by a search warrant have no right rooted in the Fourth Amendment's particularity clause in using their copy of the warrant in an attempt to monitor or control the search during its execution. *See Grubbs,* 547 U.S. at 98.

On the contrary, the plain language of the Fourth Amendment requires us to focus solely on the warrant as issued to police rather than any copy given to the person or persons targeted by the search. U.S. Const. Amend. IV ("[N]o *warrants shall issue* but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.") (emphasis added); s*ee Grubbs*, 547 U.S. at 98. This focus on the warrant as issued to the police is consistent with the particularity clause's purpose of "allow[ing] the executing officers to distinguish between items that may and may not be seized." *United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988). Pulliam's particularity argument fails.

B. Other Search Issues

Finally, according to Pulliam, the police were required, under both Fed. R. Crim. P. 41(f)(1)(C) and the terms of the warrant, to provide him and his spouse with a copy of the search warrant contemporaneous with their search. He asserts "the police refused to provide either of them a copy of the warrant." (Appellant Br. 6.) In his view, the police's failure to honor these requirements should have led to the exclusion of any evidence resulting from the search. He is wrong.

1. Rule 41(f)

There are two problems with Pulliam's Rule 41 argument. First, it raises a question about the remedies available for a violation of Rule 41. As we have recognized, some violations of Rule 41 can lead to the suppression of evidence regardless of whether the search was reasonable under the Fourth Amendment. *See United States v. Sims*, 428

F.3d 945, 955 (10th Cir. 2005).  Yet, to obtain suppression for such a violation, we require the defendant to show either "'(1) there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.'" *Id.* (quoting *United States v. Pennington*, 635 F.2d 1387, 1389-90 (10th Cir. 1980)).  Here, Pulliam makes no attempt to show either prejudice or deliberate disregard of the Rule's requirements.  As such, he would not be entitled to suppression even if the Rule were violated.

Second, as the government notes, Rule 41 does not apply to "state warrants." (Appellee Br. 12.)  *See United States v. Bookout*, 810 F.2d 965, 966-67 (10th Cir. 1987). It is correct.  Rule 41 applies only "when federal officers are directly involved in carrying out the search itself and in taking immediate custody of the fruits of the search," *id.; see United States v. Barrett*, 496 F.3d 1079, 1090 (10th Cir. 2007), or "if from the beginning it was assumed a federal prosecution would result."  *Barrett,* 496 F.3d at 1091 (quotation marks omitted).  Here, the warrant issued from a state court and state officers executed it; Pulliam does not claim any federal officers were involved in the search or that anyone assumed the search would lead to federal prosecution.  Rule 41 does not apply.

2.  Conditions Contained in the Warrant

"[A] search must be reasonable not only in its inception, but also in its execution." *United States v. Gordon*, 741 F.3d 64, 70 (10th Cir. 2014); *see Basham*, 268 F.3d at 1204; *see also Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) ("The touchstone of

our analysis under the Fourth Amendment is always *the reasonableness in all the circumstances* of the particular invasion of a citizen's personal security.") (quotation marks omitted and emphasis added).

The warrant issued here required "a copy of this warrant . . . be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution." (R. Vol. 1 at 42.) Even assuming police violated this term of the warrant, Pulliam has again failed to explain why the remedy of suppression is legally justified. He merely assumes "[t]he police's failure . . . to provide a copy of the warrant . . . renders the police's search unreasonable." (Appellant Br. 7.)

We have acknowledged the violation of a warrant's terms can make suppression appropriate even when a search is reasonable under the Fourth Amendment. As we explained in *Sims*, when police violate the terms of a federal judge's warrant, a court may suppress the resulting evidence, but, again, only when the violation was prejudicial or intentional. 428 F.3d at 955; *see also United States v. Garcia*, 707 F.3d 1190, 1196 (10th Cir.) (concluding federal standards also apply to violations of warrants issued by state court judges), *cert. denied*, 133 S. Ct. 2875 (2013).

For the fruits of this search to be suppressed, Pulliam would, at a minimum, have to show (1) the violation rendered the search unreasonable under the Fourth Amendment, or (2) the violation was intentional or resulted in prejudice. He has failed to make either showing. He does not explain why—other than police's failure to give him a complete copy of the warrant—the search was unreasonable. Given that the search was supported

by probable cause and a warrant issued properly limiting the scope of the search and adequately describing the items to be seized, we cannot see how the failure of a ministerial act—failure to include all attachments to the warrant—made the search unreasonable. As to the second required showing, Pulliam has made no attempt to show how the alleged violation was intentional or prejudicial to him. He is not entitled to suppression of the evidence from the search.

Moreover, as we read the warrant, the police officers did not violate its terms. Nothing in the warrant expressly required them to provide Pulliam a copy of the warrant's attachments. Although the better practice might have been to provide a complete copy of the warrant, including any attachments, the rationales at the core of the warrant's requirement to provide a copy of the warrant are, as far as we can tell, to notify the target of the search that the police's search occurred under the authority of a warrant and to apprise him or her of any property taken. *See Grubbs*, 547 U.S. at 98 (reasoning the search warrant's list of the places to be searched and items to be seized is not intended to allow the persons targeted by the search to attempt to ensure officers' compliance during the course of the search). After all, a complete copy of the warrant, including all attachments and a copy of the inventory are available in the files of the issuing judge and can be inspected for possible irregularities. A post hoc review of the warrant under judicial supervision is preferable to a confrontation with the police during an ongoing search. As the district judge found, the police "gave the face sheet of the warrant, with the inventory of the property taken, written on the back of the face sheet, to

defendant . . . ."[3]  (R. Vol. 2 at 149.)  The documents Pulliam received satisfied the

warrant's command.

AFFIRMED.

---

[3] Since this finding is supported by the testimony of the detective who gave the warrant to defendant, we are bound by it.  *See Basham*, 268 F.3d at 1203.