**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 21, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SAMUEL TERRAYE WINDOM,

    Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SAMUEL TERRAYE WINDOM,

    Defendant - Appellant.

|  |
|---|

No. 22-1077
(D.C. No. 1:20-CR-00068-CMA-1)
(D. Colo.)

No. 22-1119
(D.C. No. 1:15-CR-00202-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    INTRODUCTION

In September 2019, a confidential informant notified Denver police detective, Joshua Vance, that someone named Trey "was selling" methamphetamine from his apartment in south Denver. The tipster, who Vance described as previously reliable, said he or she had purchased methamphetamine "in the past" from Trey's apartment and had observed firearms and drugs inside his residence "during the past six months." Further investigation revealed the identity of "Trey" to be Appellant, Samuel Windom. Authorities successfully arranged a controlled buy to corroborate this information, at which Windom was observed selling methamphetamine to a confidential informant.[1] As a result, Vance submitted an affidavit to support the search of Windom's residence. A warrant was issued, and officers executed a search of Windom's home on December 2, 2019. The search yielded approximately 78 grams of methamphetamine and two semi-automatic guns. Windom admitted to police that he owned both guns and had previously sold methamphetamine.

Windom was charged with possession of a gun by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 1); knowingly and intentionally possessing methamphetamine with the intent to distribute in violation of 21 U.S.C.

---

[1] At one point in its description of the controlled buy, the affidavit appears to refer to the dealer of drugs as "Anthony" and not Samuel or Windom. R. Vol. I, at 45. The same paragraph correctly identifies the subject of the controlled buy as Samuel seven times. *Id*. Further, the name Anthony appears at no other point throughout the affidavit. Given the context of the description and the singularity of the reference, this court interprets the use of Anthony as a simple error that does not affect the substance of the affidavit. Therefore, we do not conclude the affidavit is inherently suspect on these grounds.

§ 841(a)(1) and (b)(1)(B)(viii) (Count 2); and knowingly using and carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). Prior to trial, Windom moved to suppress the evidence recovered during the search of his apartment. He argued the warrant failed to establish probable cause for two reasons: first, it did not prove a sufficient nexus between the purported drug sales and his residence; and second, the information provided by the informant was several months old and, thus, stale. In turn, he asserted the affidavit was so lacking in probable cause that executing officers could not have relied upon the resulting warrant in good faith. Windom requested an evidentiary hearing on the issue of suppression, which the district court denied on the grounds that his motion did not raise any material factual dispute.

The district court denied Windom's motion to suppress. It determined the informant's tip was not stale because it demonstrated ongoing drug activity and was effectively corroborated by the controlled buy. Further, the district court concluded an appropriate nexus was formed by an investigation linking Windom to the apartment and the informant's direct implication of Windom's residence. A jury trial was set for July 26, 2021, and concluded with guilty verdicts on Counts 1 and 2 of the superseding indictment. On appeal, Windom argues the district court erred in denying a hearing on the motion to suppress and renews his probable cause challenges. We conclude the district court did not abuse its discretion by forgoing a suppression hearing and affirm the district court's rulings that neither staleness nor lack of nexus undermined the probable cause supporting a search of Windom's home.

## II.    ANALYSIS

Review of a district court's analysis on the validity of a warrant is *de novo*. *United States v. Pulliam*, 748 F.3d 967, 970–71 (10th Cir. 2014). This court, however, "must accord 'great deference' to the probable-cause assessment of the state court judge who issued the warrant." *Id*. at 971. Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). When making such a probable cause determination "we look to the totality of the circumstances as detailed in the affidavit accompanying the application for the search warrant." *Pulliam*, 748 F.3d at 971.

### a.  SUPPRESSION HEARING

This court reviews the denial of an evidentiary hearing on a motion to suppress for abuse of discretion. *See United States v. Glass*, 128 F.3d 1398, 1408 (10th Cir. 1997). A trial court is required to grant a suppression hearing only when a defendant both presents facts justifying relief and demonstrates disputed issues of material fact. *Id*. An evidentiary hearing on suppression is warranted when the motion raises "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (internal quotations omitted). A hearing is not required when a motion only challenges questions of law and not any underlying facts. *United States v. Mathews*, 928 F.3d 968, 978 (10th Cir. 2019).

4

Rather than outline factual disputes, Windom's motion to suppress offered three legal arguments—staleness, nexus, and lack of good faith—for why the affidavit was insufficient to support a search warrant. These arguments contained only perfunctory factual references, with none rising to the level of definite, detailed, and nonconjectural allegations. *See United States v. Barajas-Chavez*, 358 F.3d 1263, 1266–67 (10th Cir. 2004). This absence of disputed facts and primary reliance on issues of law alone demonstrate the district court did not abuse its discretion by proceeding without a hearing. Recognizing this deficiency in his motion, Windom argues on appeal that the affidavit raised several material factual disputes on its face, including the exact timing and number of drug sales between the informant and Windom, and whether the original tipster was the same informant who participated in the controlled buy. Not only was this argument not presented to the district court, thereby subjecting it to the heightened standard of plain error review, but it also lacks definite, material facts "that, if established, would entitle [Windom] to relief." *Chavez-Marquez*, 66 F.3d at 261. Given the totality of the circumstances, the timing, numerosity, and party identity of Windom's drug exchanges do not alter the probable cause determination in this case. Thus, even if disputed facts were present on the face of the affidavit, the district court did not err in bypassing a suppression hearing.

### b. STALENESS

"[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) (internal quotations

5

omitted). Whether staleness exists depends "on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir. 2004) (internal quotations omitted). Indication of "ongoing and continuous activity makes the passage of time less critical" when making determinations of staleness. *Id.* (internal quotations omitted). Additionally, "otherwise stale information may be refreshed by more recent events" for the purpose of probable cause analysis. *United States v. Cantu*, 405 F.3d 1173, 1178 (10th Cir. 2005).

As the district court articulated, staleness is not at issue here because the allegations offered by the informant indicated Windom's drug activity was ongoing and the controlled buy effectively refreshed the information provided. The informant offered three critical pieces of information: a) Windom "was selling" methamphetamine from his apartment; b) he or she had purchased methamphetamine "in the past from [Windom's] apartment;" and c) he or she had observed drugs and guns inside Windom's apartment "during the past six months." Although these details are not highly specific, they collectively suggest the type of ongoing trafficking that diminishes the significance of when the alleged activity took place. *See United States v. Iiland*, 254 F.3d 1264, 1269 (10th Cir. 2001). Despite Windom's arguments to the contrary, there is no reason to doubt the reliability of the informant. The affidavit clearly contains hallmark indicia of trustworthiness: the informant had provided prior accurate tips to police and gave ample facts that were successfully corroborated by authorities. *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir.

6

2009). Most significantly, the officers fully corroborated the informant's core drug trafficking allegation through a carefully constructed controlled buy. To the degree any information offered by the informant was in danger of being stale, the controlled buy cured this threat by comprehensively refreshing the allegation that Windom was, in fact, dealing methamphetamine.

### c. NEXUS

Probable cause also requires a nexus between the suspected criminal activity and the place to be searched. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). Personal knowledge of illegal activity taking place in the area to be searched is not required to establish nexus. *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009). Rather, "a sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that 'the articles sought' are at a particular place." *Id*. (internal quotations omitted).

Although the controlled buy did not take place at Windom's home, the informant's tip directly implicated his apartment. The tip referenced purchasing and observing drugs inside Windom's residence. Further, independent investigation by police makes it clear that the apartment searched both belonged to Windom and was the scene of the tip's allegations. This court has held it is "merely common sense that a drug supplier will keep evidence of his crimes at his home." *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009); *see also United States v. Garcia*, 707 F.3d 1190, 1195 (10th Cir. 2013); *United States v. Sparks*, 291 F.3d 683, 689–90

(10th Cir. 2002). Given this context, the strong evidence that Windom was engaged in drug trafficking, and the direct implication of his residence as a part of his drug activity, a reasonable person could certainly believe Windom kept drugs in his home. Accordingly, the affidavit successfully established a proper nexus to support the search warrant.[2]

### III.    CONCLUSION

The judgment[3] of the United States District Court for the District of Colorado is hereby AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge

---

[2] Windom argues that if this court were to deem the search warrant invalid, the "good-faith exception" should not apply. *See United States v. Leon*, 468 U.S. 897, 922 (1984). This court concludes the warrant in this case is valid, and therefore, it need not reach the application of the exception.

[3] Because no party makes any argument about the second appeal, we dismiss that appeal as abandoned. *See Johnson v. Unified Gov't of Wyandotte Cnty./Kan. City*, 371 F.3d 723, 727 (10th Cir. 2004) ("The cross-appeals were not briefed and deemed to have been abandoned. Accordingly we dismiss the cross-appeals."). Similarly, Appellant's Second Unopposed Motion to Supplement the Record on Appeal is denied as moot because it only supplemented the second appeal and did not implicate any argument made to this court.