FILED
United States Court of Appeals
Tenth Circuit

September 5, 2024

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SANDRA COOK,

    Defendant - Appellant.

No. 23-2184
(D.C. Nos. 1:20-CV-00369-WJ-LF &
1:15-CR-03224-WJ-LF-1)
(D. N.M.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Sandra Cook seeks a certificate of appealability (COA) to appeal the district

court's denial of her 28 U.S.C. § 2255 motion to vacate, set aside, or correct her sentence.

We deny a COA and dismiss this matter.

## BACKGROUND

The factual and procedural background of Ms. Cook's two convictions for

possessing with intent to distribute methamphetamine is described in our decision

affirming the convictions. _See United States v. Cook_, 761 F. App'x 840, 841-45

(10th Cir. 2019).  We do not repeat that background information here.  Ms. Cook did not

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

challenge her sentence on direct appeal, so *Cook* does not include background information regarding the district court's sentencing determination.  Because several of her § 2255 claims involve her sentence, we provide the following additional background information to provide context for our analysis of those claims.

Ms. Cook was sentenced in 2017, so the district court calculated her guideline range using the 2016 Guidelines Manual.  *See* U.S. Sentencing Guidelines Manual (U.S. Sent'g Comm'n 2016) (hereinafter the 2016 Guidelines).  The court grouped her two counts of conviction for purposes of determining her offense level, *see id.* § 3D1.2(d), and applied several sentencing enhancements, including a two-point enhancement for possession of a firearm as part of the criminal activity and a three-point enhancement for her role as a manager or supervisor of that activity, *see id.* §§ 2D1.1(b)(1) (firearm), 3B1.1(b) (aggravating role).  The court did not articulate any facts or reasons supporting its conclusion that she was a manager or supervisor for purposes of the aggravating-role enhancement.  The enhancements resulted in a guideline range of life imprisonment.  Finding that a life sentence would be "a bit too harsh," R., vol. II at 797, the court granted a downward variance of two offense levels, which, when combined with her criminal-history category, resulted in a guideline range of 324 to 405 months.  The court sentenced Ms. Cook to 324 months on each count, with the sentences to run concurrently—the shortest possible within-guidelines sentence.

In her § 2255 motion, Ms. Cook claimed trial and appellate counsel were both ineffective.  Specifically, she claimed trial counsel was ineffective for failing to: (1) highlight alleged evidentiary inconsistencies regarding the discovery of her driver's

license and Social Security card in the same room where large quantities of methamphetamine were found, and move to suppress evidence and testimony based on these inconsistencies; (2) independently test the methamphetamine admitted into evidence and challenge the validity of the government's tests; (3) object to the prosecutor's statement during closing argument that there was additional evidence against her that was not presented at trial; (4) argue that the district court should have determined the offense level for each count separately instead of grouping them; (5) seek a downward variance because the disparity in the guideline range for mixtures versus pure methamphetamine is not supported by empirical data; and (6) object to testimony at sentencing about her connection to the Sinaloa Cartel. Ms. Cook claimed appellate counsel was ineffective for failing to argue that (1) the evidence was insufficient to support the aggravating-role enhancement, and (2) the firearm enhancement was based on an improper application of the presumption that the firearm was reasonably foreseeable.

The district court rejected all of these claims on the merits, concluding, depending on the claim, that she failed to establish either that counsel's performance was deficient or that counsel's errors were prejudicial, or both. Ms. Cook raised other claims in her § 2255 motion that the district court declined to address, some because they were vague and unsupported by specific factual allegations, and others because they were raised for the first time in her reply brief. She now seeks to appeal the district court's order.

## COA STANDARD AND SCOPE OF COA REQUEST

Before she may appeal, Ms. Cook must obtain a COA. *See United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir. 2010); *see also* 28 U.S.C. § 2253(c)(1)(B).

3

To do so, she must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Ms. Cook represents herself, so we construe her filings liberally, but we do not act as her advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Even liberally construed, we view the combined COA application and supporting brief she filed in this court (COA Application) as seeking a COA only as to the district court's denial of relief on claim (1) regarding trial counsel and both claims regarding appellate counsel.

We take this view because in the "Statements of Issues and Arguments" section of her COA Application, Ms. Cook adequately addresses only the merits of those claims. COA Appl. at 6. Although she also asserts error in the district court's denial of or refusal to address other claims, including claims regarding calculation of her guideline range and her claim of cumulative ineffective assistance of counsel, she does so only in summary fashion. *See id.* at 8, 10. Her listing of issues and her unsupported factual narrative are not a "substitute for legal argument," *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). We thus consider only the claims she adequately briefed. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *see also Meek v. Martin*, 74 F.4th 1223, 1267-68 (10th Cir.

4

2023) ("We are under no obligation to fill in the blanks of a litigant's inadequate brief, and we discern no reason to do so here." (internal quotation marks omitted)).

## DISCUSSION

### I.    Legal Standards

"[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (internal quotation marks omitted). But "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Thus to establish that counsel was ineffective, Cook must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. Because she must demonstrate both prongs, her failure to prove either one is dispositive. *See id.* at 700.

To satisfy the deficient performance prong, Ms. Cook "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To satisfy the prejudice prong, she "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When, as here, the basis for the claim is counsel's failure to raise an issue, we look to the merits of the

omitted issue to determine both whether counsel's omission was unreasonable and whether it was prejudicial. *Cargle v. Mullin*, 317 F.3d 1196, 1202, 1205 (10th Cir. 2003). If the omitted issue is without merit, counsel's failure to raise it is not prejudicial, and the ineffective-assistance claim fails. *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *Id.* at 796. A finding is clearly erroneous if it is not supported by the record or if, after reviewing the evidence, we are "left with a definite and firm conviction that a mistake has been made." *United States v. Pulliam*, 748 F.3d 967, 970 (10th Cir. 2014) (internal quotation marks omitted). Under that standard, we will uphold any finding that is plausible in light of the evidence as a whole. *United States v. Nkome*, 987 F.3d 1262, 1277 (10th Cir. 2021). An ineffective assistance of counsel claim "presents a mixed question of fact and law, which we review de novo." *Orange*, 447 F.3d at 796.

## II. Application

### A. Claim Regarding Trial Counsel

In her § 2255 motion, Ms. Cook claimed trial counsel was ineffective for not calling the jury's attention to alleged evidentiary inconsistencies regarding the discovery of her driver's license and Social Security card in the room where large quantities of methamphetamine were found and did not move to suppress evidence and testimony based on these inconsistencies. She claimed the evidence was flawed because the driver's license and Social Security card themselves were not seized; investigators did not

take other pictures she believed were necessary; there were inconsistencies, questions, and technological issues associated with the discovery and photographing of the license and Social Security card; and there were inconsistencies between Detective Koppman's and other officers' accounts of where and how they found the license and Social Security card. Ms. Cook included date and time stamps for the photos, annotated copies of the photos, and provided a timeline of the order in which photos were taken, which she said contradicted the officers' accounts. She claimed that if counsel had pointed these issues out to the jury and litigated the admissibility of this evidence differently, the trial court would have declared a mistrial, the jury would have found her not guilty, or she would have received a shorter sentence.

The district court concluded the challenged evidence was "of questionable import" because "given the overwhelming evidence arrayed against her, Ms. Cook has not met her burden of showing 'that the decision reached would reasonably likely have been different'" but for counsel's alleged errors. R., vol. 1 at 215 (quoting *Strickland*, 466 U.S. at 696). As summarized earlier in the court's order, that evidence presented at trial included Ms. Cook being found in two locations at different times where distributable quantities of methamphetamine and significant amounts of cash were also found, another participant at the first location identifying Ms. Cook as her supplier, and Ms. Cook's admission to Detective Koppman that she was a methamphetamine supplier for the Sinaloa Cartel in Mexico.[1] *See id.* at 199-201.

---

[1] Ms. Cook did not testify at trial but on appeal, she denied having made this admission.

In her COA Application, Ms. Cook reiterates some of the factual narrative she included in her § 2255 motion and repeats several of her specific deficient performance allegations. But she does not meaningfully address the basis for the district court's ruling—that she was not prejudiced by counsel's alleged errors. *Cf. Nixon*, 784 F.3d at 1369 (affirming district court's decision where the "opening brief contain[ed] nary a word to challenge the basis of" that decision). She argues that the "adversarial system" failed her because counsel did not adequately test the government's evidence, and she declares that "[i]t's easy to convict someone when only one side of the story is presented." COA Appl. at 9. But this is hyperbole, not argument. Reasonable jurists would not debate the correctness of the district court's ruling.

## B. Claims Regarding Appellate Counsel

Ms. Cook's claims regarding appellate counsel both involve counsel's failure to challenge sentencing enhancements.

"When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Portillo-Uranga*, 28 F.4th 168, 178 (10th Cir. 2022) (internal quotation marks omitted); *see also* 18 U.S.C. § 3742(e) (requiring appellate court to accept sentencing court's findings of fact unless they are clearly erroneous and, except in circumstances not relevant here, to defer to its application of the guidelines to the facts).

8

### 1. Aggravating-Role Enhancement

Application of a three-level aggravating-role enhancement requires the sentencing court to find that five or more individuals, including the defendant, *see United States v. Robertson*, 45 F.3d 1423, 1448 (10th Cir. 1995), were "criminally responsible for the commission of the offense" for which the defendant was convicted, 2016 Guidelines § 3B1.1(b). The court must also find the defendant managed or supervised at least one participant. *Id.* § 3B1.1(b) cmt. n.2. A manager or supervisor "exercise[s] some degree of decision-making authority, control, or organizational authority over" another participant. *United States v. Hunsaker*, 65 F.4th 1223, 1228 (10th Cir. 2023) (internal quotation marks omitted).

In her § 2255 motion, Ms. Cook claimed appellate counsel was ineffective for not challenging this enhancement on the ground that the evidence was insufficient to support the sentencing court's determination that she was a manager or supervisor, because the list of participants was based on hearsay statements by confidential informants and not corroborated by other evidence, and because there was no evidence she had control over another participant. She also claimed appellate counsel was ineffective for failing to raise the sentencing court's failure to make findings supporting its determination.[2]

---

[2] In her reply in support of her § 2255 motion, Ms. Cook attempted to expand these arguments to include additional claims of ineffective assistance of trial counsel. The district court refused to address the new arguments because she did not raise them in her motion. The district court acted within its discretion in declining to address those arguments. *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Parker raises several other alleged failures of counsel to object at trial, all of which he has waived by failing to assert them in his district court habeas petition."); *Thompkins v. McKune*, 433 F. App'x 652, 658-59 & n.5 (10th Cir. 2011) (unpublished) (collecting unpublished

In ruling on Ms. Cook's § 2255 motion, the district court recognized that the sentencing court erred by failing to articulate facts and reasons for its aggravating-role determination. *See United States v. Pena-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir. 2008). But the district court concluded Ms. Cook was not prejudiced by counsel's failure to raise that issue and the evidentiary issues, because Detective Koppman's testimony and the presentence investigation report furnished evidence that supported the sentencing court's application of the enhancement. The court quoted the evidence at length, identifying the participants and describing their roles and Ms. Cook's roles. As relevant here, the court cited evidence that showed "Melanie Brunson worked as a runner for Ms. Cook," and that Ms. Cook "made decisions about who could receive her supply and cut off supply to those who did not maintain certain standards," kept "money tabulations on several of her distributors," "maintained supervision of" a participant "who was selling out of Ms. Cook's residence," and "lived across the street from another distributor . . . , presumably for supervisory reasons." R., vol. I at 211 (brackets and internal quotations and record citations omitted).

In her COA Application, Ms. Cook argues the district court applied the wrong standard in evaluating the aggravating-role evidence because it relied on *Hunsaker*, which she says has been "overturned." *See* COA Appl. at 6-7. She also disputes one of the individuals the district court identified as a participant—Ms. Brunson—arguing that

---

decisions from this court as well as published cases from other circuits holding that habeas claims raised for the first time in a traverse are not properly before the district court). Ms. Cook alludes to those arguments in her COA Application, but we also decline to address them.

her inclusion on the list was based on the uncorroborated hearsay statement of a confidential informant, and that Ms. Brunson "simply stated she had been a runner," not that she was a participant in the criminal activity or that she was a runner for Ms. Cook. *Id.* at 7. Ms. Cook does not otherwise dispute the district court's list of participants, and she does not challenge the district court's description of her role, other than to argue that she had no control over Ms. Brunson, and that "[t]he other 'participants' . . . never said anything other than they knew Cook was a buyer, seller, or user of drugs." *Id.*

Ms. Cook's argument that the district court erred by relying on the *Hunsaker* test for determining whether she was a manager or supervisor is a non-starter. Contrary to her contention, *Hunsaker* has not been overruled, and she cites no authority—and we are not aware of any—establishing a different test.

Her evidentiary challenges also do not establish that the district court's decision is debatable. Sentencing determinations may be based on reliable hearsay. *See United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012); *see also* 2016 Guidelines § 6A1.3(a) (stating that sentencing courts may consider any relevant information "without regard to its admissibility . . . provided [it] has sufficient indicia of reliability to support its probable accuracy"). Ms. Cook complains that Detective Koppman interviewed his sources "at unknown times," COA Appl. at 7, but this is insufficient to show that the hearsay statements he testified about were unreliable. And she cites no evidence contradicting the district court's description of the evidence regarding her role in the criminal activity and who the other participants were.

11

Based on that evidence, the district court concluded the record supports the sentencing court's determination that there were at least five participants in the criminal activity and that Ms. Cook managed or supervised at least one of them. *See United States v. Salli*s, 533 F.3d 1218, 1223 (10th Cir. 2008) (identifying factors relevant to manager-supervisor determination in cases involving the sale of illegal drugs, including that "other sellers worked for him . . . or had their activities controlled by him," and "he restricted the people to whom other coconspirators could sell their drugs" (internal quotation marks omitted)).  Given that the evidentiary challenges underpinning Ms. Cook's ineffective assistance claim lacked merit, the district court concluded she was not prejudiced by counsel's failure to raise those issues and the sentencing court's error in not making findings to support its aggravating-role determination.  Reasonable jurists reviewing that determination de novo, *see Orange*, 447 F.3d at 796, would not debate its correctness.

### 2.  Firearm Enhancement

Under 2016 Guidelines § 2D1.1(b)(1), a two-level enhancement applies to drug trafficking convictions "[i]f a dangerous weapon (including a firearm) was possessed." 2016 Guidelines § 2D1.1.  This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* § 2D1.1, cmt. n.11(A).  "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*

Under the Guidelines, a defendant may be held accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or

12

willfully caused by the defendant" in furtherance of a "jointly undertaken criminal activity . . . whether or not charged as a conspiracy" if the acts and omissions were in furtherance of the criminal activity and reasonably foreseeable.  2016 Guidelines § 1B1.3(a)(1); *see also id.* § 1B1.3 cmt. n.1 (explaining that the focus of sentencing accountability is on the specific acts and omissions for which the defendant is to be held accountable, not "on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator").  Thus, a sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him."  *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) (attributing firearm possession to codefendant in non-conspiracy case).

The government has the initial burden to prove by a preponderance of the evidence that the defendant possessed a firearm.  *Portillo-Uranga*, 28 F.4th at 178.  It meets that burden "when it shows that a weapon was located near the general location where at least part of a drug transaction occurred."  *United States v. Foy*, 641 F.3d 455, 470 (10th Cir. 2011) (internal quotation marks omitted).  Once the government meets its initial burden, "the burden shifts to the defendant to show that it is clearly improbable the weapon was connected with the offense."  *Portillo-Uranga*, 28 F.4th at 178 (internal quotation marks omitted).

Here, the sentencing court concluded application of the enhancement was appropriate because a loaded firearm was found at the location where Ms. Cook and

13

Jeffrey Burlingame were arrested.[3]  The court acknowledged Ms. Cook's denial that she knew he had the gun, but it attributed possession to her, holding that "[t]he presence of firearms is reasonably foreseeable in this type of drug trafficking activity."  R., vol. II at 771; *see United States v. McKissick*, 204 F.3d 1282, 1293 (10th Cir. 2000) (recognizing, in assessing sufficiency of evidence to support conviction for carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), that "[d]rug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers," and holding that "it is highly unlikely the presence of the handgun in a car containing a large amount of crack cocaine was merely coincidental"); *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (noting firearms and large amounts of cash are viewed as "tools of the trade" for drug trafficking (internal quotation marks omitted)).

In her § 2255 motion, Ms. Cook argued that application of the enhancement was inappropriate because the gun belonged to Mr. Burlingame, who "accepted sole responsibility" for it and said nothing suggesting she knew about it.  R., vol. III at 27, 29. She claimed appellate counsel was ineffective for not arguing that the sentencing court "unreasonably and overbroadly applied a presumption that in certain cases it is reasonably foreseeable to defendants that other members involved in the offense will carry firearms."  *Id.* at 27 (footnote and internal quotation marks omitted).

---

[3] Ms. Cook and Mr. Burlingame were prosecuted separately.  He pleaded guilty to possession with intent to distribute methamphetamine and carrying a firearm during and in relation to a drug trafficking crime.

The district court denied relief, holding that "[t]he sentencing court did not err by inferring, based on the large amount of methamphetamine present in the residence where Mr. Burlingame possessed a firearm, that the firearm was reasonably foreseeable to Ms. Cook." R., vol. 1 at 214 (internal quotation marks omitted). The court noted that she presented no evidence at sentencing suggesting it was clearly improbable the gun was connected to their drug trafficking activities, and it held that her claim that she did not know he had a gun was "of no import," *id.* at 213, because her subjective knowledge was insufficient to meet her burden to show clear improbability.[4] Based on its conclusion that Ms. Cook's challenges to the firearm enhancement failed on the merits, the district court concluded her ineffective assistance claim also failed because she could not show she was prejudiced by counsel's failure to challenge the enhancement on direct appeal.

In her COA Application, Ms. Cook insists she had "no way of knowing" Mr. Burlingame would bring a gun to their meeting, and she claims the district court "applied an over broad categorization to [her] case that [a defendant] should know that individuals carry guns when a large amount of drugs are involved." COA Appl. at 11. She also argues that the application of the enhancement was inappropriate because she and Mr. Burlingame were not "involved as co-defendants in a conspiracy." *Id.* But

---

[4] Ms. Cook attached a declaration by Mr. Burlingame to her reply in support of her § 2255 motion. The declaration stated that she "had no knowledge" and "no reason to believe" he would bring a gun to their meeting. R., vol. I at 162. She did not present his declaration to the sentencing court, so the district court appropriately ignored it in ruling on her motion. In any event, the declaration does not establish either that it was not reasonably foreseeable that he would bring a gun to their meeting or that it is clearly improbable the gun was connected to their drug trafficking activities.

possession of a firearm during a drug trafficking offense can be attributed to the defendant regardless of whether she and the person who possessed it were not charged with conspiracy. *See McFarlane*, 933 F.2d at 899; 2016 Guidelines § 1B1.3(a)(1). And once the government showed there was a gun at the location where Ms. Cook and Mr. Burlingame were arrested—regardless of whose gun it was—she had to show it was clearly improbable that the gun was connected with their drug trafficking activities in order to avoid application of the enhancement. Reasonable jurists would not debate the correctness of the district court's determination that given her failure to make that showing, "[t]here is no basis to find that the sentencing court's application of this enhancement was clearly erroneous, and therefore no basis to find that Ms. Cook's counsel was ineffective by omitting this issue on appeal." R., vol. I at 215.

## CONCLUSION

We deny Ms. Cook's request for a COA and dismiss this matter.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge